**Bruce L. CRUMLEY, Plaintiff,**

v.

**STONHARD, INC., and Stonhard Phantom Equity Plan, John and Jane Does (1–100), Defendants.**

**Civil Action No. 95–3426.**

United States District Court,
D. New Jersey.

April 4, 1996.

**590**

Nancy S. Martin, Law Offices of Linda B. Kenney, Red Bank, New Jersey, for Plaintiff.

Ezra Rosenberg, Robert D. Rhoad, Dechert, Price & Rhoads, Princeton, New Jersey, for Defendants.

## OPINION

ORLOFSKY, District Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56. The issues before the Court concern whether Defendants' employee benefit plan is exempt from the fiduciary duty provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and whether Plaintiff's state law claims are preempted by ERISA. For the reasons set forth below, the Court finds that Defendants' employee benefit plan is exempt from ERISA's fiduciary duty requirements and that ERISA preempts Plaintiff's state law claims. Accordingly, Defendants' motion for summary judgment is granted.

## FACTS AND PROCEDURAL HISTORY

This is an action brought by Plaintiff, Bruce L. Crumley ("Crumley"), against Stonhard, Inc. ("Stonhard"), his former employer, and Stonhard Phantom Equity Plan (the "Plan"), for benefits allegedly owed to him pursuant to the Plan.

Crumley was hired by Stonhard in September, 1987. Beginning in 1990, Stonhard adopted an employee benefit plan, known as the "Plan." The stated purpose of the Plan was to assist Stonhard "in retaining valued employees by offering them a greater stake in the Company's success . . . and to reward those employees by allowing them to share in increases in the value of the Company . . ." (Plan, § 1, attached to Certification of David P. Reif, III ("Reif Certification") as Exhibit A). By the terms of the Plan, the Board of Directors of Stonhard (the "Board") was to designate, in its discretion, an employee as eligible to participate in the Plan. The Plan was administered by the Board. (Plan, § 4.01). Once designated by the Board, an employee was required to enter into a Participation Agreement ("Agreement"). (Plan, § 3.02). The Plan participants, or Holders, were awarded "Phantom Stock Units," which had a specified value that changed as the value of Stonhard's common stock changed. In return, the employee was required to forego, in part, his or her right to bonuses that otherwise would have been earned under Stonhard's Objective Bonus Plan. (Plan, § 6.03).

Under the Plan, Holders of Phantom Stock Units were eligible for payments of benefits in three circumstances: (1) upon an excess distribution of earnings with respect to Stonhard's common stock, (Plan, § 8.01); (2) upon a change in control or a public offering of Stonhard's common stock, (Plan, § 8.02); and (3) upon a Holder's retirement or other termination of employment, (Plan, § 8.03). Payments of benefits, pursuant to § 8.03, following a termination of a Holder's employment, are made in installments over a period of five years, beginning at the later of the date of the Holder's retirement, or attainment of age sixty-five. (Plan, § 9.02). The Plan expressly exempts from payments pursuant to § 8.01 and § 8.02 Holders who are

not actively employed on the relevant date of excess distribution of change of control. (Plan, § 8).[1] All benefits received pursuant to the Plan were contributed by Stonhard.

In June, 1990, Crumley was selected by the Board to participate in the Plan. On June 26, 1990, Crumley became a Plan participant by executing a Participation Agreement. (Reif Certification ¶ 7). On October 19, 1992, approximately two years later, Stonhard terminated Crumley's employment. On that date, Crumley and Stonhard entered into a severance agreement, which provided that Crumley was eligible for up to twenty-eight weeks severance pay and out placement services for up to one year. (Reif Supplemental Certification, Exhibit 3; Crumley Certification ¶ 10). Crumley's termination was not the result of retirement or death while eligible for retirement. (Reif Certification ¶ 7).

Thereafter, on May 24, 1993, Crumley and Stonhard entered into another agreement (the "May 24 Agreement"), wherein Stonhard agreed to pay Crumley forty-five thousand dollars, in exchange for a general release by Crumley of "any Claims arising out of or relating to the Plan, the Participation Agreement or any bonuses under the Company's Objective Plan foregone by Crumley pursuant to the terms of the Plan and the Participation Agreement." (May 24 Agreement § 2, attached to Reif Certification at Exhibit B).

On July 20, 1995, Crumley filed a complaint in this matter asserting a claim against Defendants under ERISA for breach of fiduciary duties. (Complaint ¶ 15). In that complaint, Crumley alleged that prior to entering into the May 24 Agreement, two Stonhard representatives, Jeffrey Stork and David Reif, misrepresented to him "whether Stonhard was for sale or whether or not an arrangement for sale was in the offing or had been signed." (Complaint ¶ 11). Crumley further asserts that he entered into the May

24 Agreement based on those alleged misrepresentations that Stonhard was not for sale. (Complaint ¶ 12). Stonhard, was in fact, sold to RPM, Inc., on October 26, 1993. Crumley contends in his complaint that the sale "substantially affected" the value of his Units under the Plan. (Complaint ¶ 13).

Six months after filing his initial complaint, Crumley filed his First Amended Complaint ("Amended Complaint") on December 14, 1995. In his amended complaint, Crumley added four state common law causes of action, which include Breach of a Fiduciary Duty (Count Two), Intentional Misrepresentation or Omission (Count Three), Negligent Misrepresentation or Omission (Count Four), and Breach of Implied Covenant of Good Faith and Fair Dealing (Count Five). The amended complaint does not allege any new facts, nor does it change the substance of any of his previous allegations.

On February 22, 1996, Defendants moved for summary judgment on all counts of Plaintiff's amended complaint. This motion is presently before this Court.

## DISCUSSION

### A. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Hersh v. Allen Products, Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. See Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are

1. Section 8 states in relevant part that:
   [u]pon a Holder's termination of employment, the Holder's Units will be cancelled and the Holder's only rights hereunder shall be to be paid in accordance with Articles 8 and 9. Except as specifically provided in Section 9.04, no payment will be made under Section 8.01

or Section 8.02 to a Holder who is not actively employed on the relevant date.
Section 9.04, in turn, provides for certain enhanced benefits upon a change in control only to former Holders/employees who, within five years of the change in control, had either retired from Stonhard or died while eligible for retirement.

"any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Under this rule, a defendant must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which a plaintiff has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nonetheless, defendant, as the moving party on the motion, bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

### B. *Plaintiff's Allegations*

The issues before the Court in this matter are two-fold: (1) whether the Plan is exempt from the fiduciary duty provisions of ERISA; and (2) whether Crumley's state law claims are preempted by ERISA. ·

### (1) *Breach of ERISA's Fiduciary Duty Provisions*

■ The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, is a comprehensive statute "that subjects a wide variety of employee benefit plans to complex and far-reaching rules designed to protect the integrity of those plans and the expectations of their participants and beneficiaries." *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 929 (3d Cir.1985). Employee pension benefit plans covered by ERISA include any employment benefit plan that:

> results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A)(ii). Both parties agree that the Plan at issue in the instant case is an employee pension plan covered by ERISA.

In Count One of his amended complaint, Crumley alleges that Stonhard breached its ERISA fiduciary duty requirements to him. ERISA's fiduciary duty requirements are set forth in Part 4 of the statute. *See* 29 U.S.C. § 1104. Not all "employee pension benefit plans," within the meaning of § 1002(2)(A), however, are subject to these fiduciary duty requirements. The scope of Part 4 is limited by § 1101(a), which states, in relevant part, that Part 4:

> shall apply to any employee benefit plan [subject to ERISA] *other than*—
>
> (1) a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees; ... (emphasis supplied).

29 U.S.C. § 1101(a).

In order to fit within this exemption, a plan must satisfy two prerequisites: it must be unfunded, and it must be for the purpose of providing deferred income for select employees. The undisputed facts reveal that the Plan satisfies both of these elements and thus falls within this exemption.

■ Defendants assert that the Plan is unfunded. (*See* Reif Certification ¶ 2). An unfunded plan is one in which only the employer provides the necessary funding for the

benefits under the plan. *See Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 144 (3d Cir.1987) (an unfunded plan is one where "every dollar provided in benefits is a dollar spent by ... the employer"), *aff'd in part, rev'd in part*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30, 33–34 (3d Cir.1989) (same). A review of the Plan reveals that Stonhard, itself, is the source of all the benefits and payments under the Plan. No contributions are made by the employee or any other third party. Based upon the above factors, it is evident that Stonhard's Plan is unfunded.

In opposition to Defendants' motion, Plaintiff argues that "it is not clearly established that the Plan at issue was unfunded. This is a disputed question of fact and, a such, summary judgment cannot be granted." (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Brief") at 12). Plaintiff sets forth no facts or evidence in support of this contention. A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Since the undisputed facts presented to this Court reveal that the Plan is unfunded, Crumley's wholly unsupported assertion to the contrary is insufficient to establish a genuine material issue of disputed fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("opponent must do more than simply show that there is some metaphysical doubt as to material facts").

The Plan also satisfies the second prong of the statutory exemption. The stated purpose of the Plan is revealed in its very first paragraph:

> The purpose of the Plan is to assist the Company in retaining valued employees by offering them a greater stake in the Company's success and a closer identity with it, and to reward those employees by allowing them to share in increases in the value of

the Company, as represented by increases in the value of the Company's stock. (Plan, § 1). The Plan further states that it "is intended solely to enable those Employees whose contributions to the Company are directly reflected in the value of the Company's Common Stock to receive deferred cash compensation to reflect the value of those contributions." (Plan, § 5). Other sections of the Plan also reveal that the Plan is "primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *See* 29 U.S.C. § 1101(a)(1)[2].

Crumley does not dispute the fact that the Plan is intended to provide a benefit to high-level employees. In fact, Crumley acknowledges that the Plan was referred to as the "Golden Handcuffs" Plan, and that "the Plan was Stonhard's method of retaining good employees." (Crumley Certification ¶ 6).

Since the Plan is both unfunded and primarily for the purpose of providing deferred compensation for selected employees, it is exempt from the fiduciary duty requirements of ERISA. *See* 29 U.S.C. § 1101(a). Accordingly, Crumley's fiduciary duty claim under ERISA fails as a matter of law.

**(2)** *Plaintiff's State Law Claims*

■ In Counts Two through Five of his amended complaint, Plaintiff seeks to assert state law claims against the Defendants for breach of fiduciary duty, intentional misrepresentation or omission, negligent misrepresentation or omission, and breach of implied covenant of good faith and fair dealing, respectively. ERISA contains an express preemption provision which states that:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in [§ 1003(a) ] and not exempt under [§ 1003(b) ] (emphasis added).

29 U.S.C. § 1144(a).[3] This broad preemption clause "establishes as an area of exclusive

---

**2.** Section 3.01 provides that an employee must be designated by the Board in order to participate in the Plan. Section 3.02 further provides that an employee so designated by the Board

must execute a Participation Agreement before being able to participate in the Plan.

**3.** Subsection (b) exempts from preemption state law claims arising prior to January 1, 1975, and

federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). *Cf. Barnett Bank of Marion County v. Bill Nelson,* —— U.S. ——, ——, 116 S.Ct. 1103, ——, 134 L.Ed.2d 237 (1996).

Therefore, whether Crumley's state law claims are preempted by ERISA depends upon whether such claims "relate to" an employee benefit plan covered by ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *Travitz v. Northeast Dept. ILGWU Health and Welfare Fund,* 13 F.3d 704, 709 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994). In *Pilot Life,* the plaintiff asserted state common law causes of action for tortious breach of contract, breach of fiduciary duty, and fraud in the inducement. The Court found that each of these claims related to the alleged improper processing of a benefits claim under a plan governed by ERISA, and therefore held that each of the claims was preempted by ERISA. *Id.* at 47–48, 107 S.Ct. at 1552–53. In so holding, the United States Supreme Court stated that the phrase "relate to" should be given "its broad common-sense meaning, such that a state law 'relate[s] to a benefit plan' in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 47, 107 S.Ct. at 1553 (1987) (citations omitted).

■ A state law claim may also "relate to" a plan if the claim "affects relations among principal ERISA entities—the employer, the plan, the plan fiduciaries and the beneficiaries." *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.,* 869 F.Supp. 278, 283 (D.N.J.1994), *citing Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,* 793 F.2d 1456 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987). *See also Travitz v. Northeast Dept. ILGWU Health and Welfare Fund,* 13 F.3d at 709–710 (state

law preempted where it affects relations among principal ERISA entities).

■ The application of the foregoing factors compels the conclusion that each of Plaintiff's state law claims is preempted by ERISA. In Count Two, Plaintiff seeks to state a claim for common law breach of fiduciary duty. In this Count, Plaintiff alleges that "[i]n the event that the District Court determines that the Stonhard Phantom Equity Plan is not a qualified plan under ERISA, Stonhard's misrepresentations and/or omissions made to plaintiff are a breach of Stonhard's fiduciary duties under New Jersey state law." (Amended Complaint ¶ 18). Plaintiff defeats this count with his own words, since he concedes that "[t]here is no disagreement between the parties that the Plan at issue in the present matter is an 'employee pension plan' that is subject to and regulated by ERISA." (Plaintiff's Brief at 11). Plaintiff seeks to state a claim for breach of fiduciary duty under New Jersey law *only if* the Plan is not a qualified plan under ERISA. Since the Court finds, and the parties do not dispute, that the Plan at issue is such a qualified plan, Count Two for breach of common law fiduciary duty fails as a matter of law.

In Count Three, Plaintiff attempts to state a claim for Intentional Misrepresentation or Omission. In this Count, Plaintiff alleges that "Stonhard i[n]tentionally misrepresented to plaintiff, at the time plaintiff entered into an agreement with Stonhard's Equity Plan, that the rumors regarding the sale of Stonhard were untrue ... As a direct result, plaintiff has been harmed." (Amended Complaint ¶¶ 21, 22).

■ Plaintiff claims that had Stonhard not misrepresented to him the likelihood of a sale of the company, he would not have entered into the May 24 Agreement. Further, he contends that had he not entered into the May 24 Agreement, he would be entitled to greater benefits pursuant to the Plan. It is apparent that the allegations in this Count are predicated upon the existence of the Plan

claims for violating state laws regulating insurance, banking, or securities. 29 U.S.C. § 1144(b)(1) and (2). The Plan at issue in the

instant matter does not satisfy all of the requirements of any of the plans exempted under § 1003(b).

and the benefits to which Plaintiff alleges he is entitled. Moreover, Plaintiff's claim for intentional misrepresentation requires the court to examine the terms of the Plan. When "the court's inquiry must be directed to the plan, [a] judicially created cause of action 'relate[s] to' an ERISA plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

Plaintiff's intentional misrepresentation claim also *relates to* the Plan because the claim clearly involves the relations between principal ERISA participants—Plaintiff, who is the employee and Plan beneficiary, and Defendants, who are the employer, Plan administrator, and Plan. *See Travitz v. Northeast Dept. ILGWU Health and Welfare Fund*, 13 F.3d at 709–710 (state law preempted where it affects relations among principal ERISA entities); *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 869 F.Supp. at 283 (D.N.J.1994) (same). Accordingly, Plaintiff's claim in Count Three for Intentional Misrepresentation or Omission fails as a matter of law since it *relates to* the Plan, and is therefore preempted by ERISA. *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 (3d Cir.1990) (state law claim for misrepresentation preempted by ERISA), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Bernatowicz v. Colgate Palmolive Co.*, 785 F.Supp. 488, 493 (D.N.J.1992) (court held that since plaintiffs' negligent misrepresentation claim was premised on the existence of a pension plan and the claim arose solely from a representation over the plan rules, it was preempted), *aff'd*, 981 F.2d 1246 (3d Cir.1992).

In Count Four, Plaintiff seeks to state a claim against Stonhard for Negligent Misrepresentation or Omission.[4] In Count Five, Plaintiff claims purports to state a claim for Breach of Implied Covenant of Good Faith and Fair Dealing.[5] Each of these claims stems from the alleged misrepresentations made to him prior to his execution of the

May 24 Agreement which allegedly interfered with his rights to benefits pursuant to the Plan. Since these claims *relate to* the Plan for the same reasons that Plaintiff's intentional misrepresentation claim in Count Three relates to the Plan, they, too, are preempted by ERISA and fail as a matter of law.

In his Brief, Crumley argues that, should the Court conclude that the Plan is exempt from the fiduciary duty requirements of ERISA, it should not find that his state law claims are preempted. Crumley asserts that to preclude recovery based on ERISA's fiduciary requirement and to preclude recovery based on the state law claims would leave him without any means of enforcing his rights. (Plaintiff's Brief at 14).

Plaintiff has no remedy, however, because he has no claim and no damages. Even if the alleged misrepresentations regarding the sale of Stonhard were actually made to Plaintiff by Defendants prior to Plaintiff's execution of the May 24 Agreement, Crumley cannot establish that the alleged misrepresentations were *material* even if he relied upon them. Plaintiff contends that the value of his benefits under the Plan would have significantly increased when Stonhard was sold, and if he had been aware of the negotiations for the sale of Stonhard, he would not have executed the release contained in the May 24 Agreement. (Plaintiff's Brief at 8, 17). An examination of the provisions of the Plan, however, directly refutes Crumley's claim that the sale of Stonhard would have increased the value of his Units under the Plan.

Under the Plan, Holders of Phantom Stock Units were eligible for payments of benefits in three circumstances: (1) upon an excess distribution of earnings with respect to Stonhard's common stock, (Plan, § 8.01); (2) upon a change in control or a public offering of Stonhard's common stock, (Plan, § 8.02);

---

4. In Count Four, Plaintiff states that "Stonhard negligently misrepresented to plaintiff, at the time plaintiff entered into an agreement with Stonhard's Equity Plan, that the rumors regarding the sale of Stonhard were untrue ... As a direct result, plaintiff has been harmed." (Amended Complaint ¶¶ 23, 24).

5. In Count Five, Plaintiff states that "Plaintiff breached its implied covenant of good faith and fair dealing when it misrepresented to plaintiff regarding the sale of Stonhard ... As a direct result, plaintiff has been harmed." (Amended Complaint ¶¶ 27, 28).

and (3) upon a Holder's retirement or other termination of employment, (Plan § 8.03). The Plan expressly exempts from payments pursuant to a change in control of Stonhard, Holders who are not "actively employed" on the relevant date of change of control. (Plan, § 8).[6] Plaintiff was not "actively employed" on the relevant date of the change of control since the sale did not occur until more than a year after his employment was terminated.[7] Therefore, the terms of the Plan reflect that the sale of Stonhard a year after Plaintiff was terminated did not and *could not* affect the value of Plaintiff's benefits.[8]

In sum, Defendants are exempt from the ERISA fiduciary duty provisions that Plaintiff alleges they violated in Count One of Plaintiff's amended complaint. Further, Counts Two, Three and Four of the amended complaint alleging state law claims for breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, and breach of implied covenant of good faith and fair dealing, respectively, *relate to* a plan governed by ERISA, and are therefore preempted by ERISA. Accordingly, all Counts of Plaintiff's amended complaint fail as a matter of law.

For the foregoing reasons, the Court will grant Defendants' summary judgment on all Counts of Plaintiff's amended complaint. This Court will enter an appropriate order.

**6.** *See supra,* note 1.

**7.** The record establishes that Plaintiff was terminated on October 19, 1992, and Stonhard was sold to RPM, Inc. on October 26, 1993. (*See* Crumley Certification ¶¶ 10, 16, Exhibits A and B; Defendants' Brief in Support of Summary Judgment at 6).

**8.** Plaintiff's reliance upon *Mullins v. Pfizer, Inc.,* 23 F.3d 663 (2d Cir.1994), is misplaced. In *Mullins,* the Second Circuit reversed the district court's grant of summary judgment in favor of Pfizer on plaintiff's ERISA's claim, finding that any misrepresentations made to the plaintiff would have been *material.* In that case, the plaintiff contended that the defendant misrepresented its intention to offer enhanced benefits, and the undisputed facts revealed that the plaintiff would have been entitled to the enhanced severance benefits had he not accepted early retirement.

## ORDER

This matter having come before the Court on April 4, 1996, on the motion Defendants for summary judgment, Nancy S. Martin, Esq., of the Law Offices of Linda B. Kenney, appearing for the Plaintiff, and Ezra Rosenberg, Esq., and Robert D. Rhoad, Esq., of Dechert Price & Rhoads, appearing on behalf of Defendants; and,

The Court having considered the submissions of the parties, including Defendants' Brief in Support of Summary Judgment and the Certification of David P. Reif in support thereof, Plaintiff's Brief in Opposition to Summary Judgment and the Certification of Bruce L. Crumley in support thereof, Defendants' Reply Brief and the Supplemental Certification of David P. Reif, in support thereof, and Plaintiff's undated letter Sur-Reply Brief discussing the case of *Varity Corporation v. Charles Howe,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996);

IT IS HEREBY ORDERED on this 4th day of April, 1996, that Defendants' motion for summary judgment is granted for the reasons set forth in the Court's opinion filed herewith.

Plaintiff has also invited the Court's attention to the recent case of *Varity Corporation v. Charles Howe,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). *Varity* held in the unique factual circumstances of that case that the employer was "acting in its capacity as an ERISA 'fiduciary' when it . . . misled the plan beneficiaries;" that the employer had "violat[ed] the fiduciary obligations that ERISA § 404 imposes on plan administrators;" and that ERISA § 502(a)(3) authorizes a plan beneficiary "to bring a lawsuit . . . that seeks relief for individual beneficiaries harmed by an administrator's breach of fiduciary obligations." *Id.* at ——–——, 116 S.Ct. at 1068, 134 L.Ed.2d 130. This case, however, is clearly distinguishable from *Varity,* because as noted above, the Plan is exempt from the fiduciary duty provisions of ERISA, and even assuming the misrepresentations Plaintiff alleges were made and he relied upon them, they were not material and he did not and *could not* suffer any damages under the Plan.