**Judith WEINSTEIN, Plaintiff,**

v.

**PAUL REVERE INSURANCE COMPANY, Defendant.**

**Civil No. 98–1140 (SMO).**

United States District Court, D. New Jersey.

July 23, 1998.

Mark R. Rosen, Mesirov, Gelman, Jaffe, Cramer & Jamieson, LLP, Cherry Hill, NJ, for Plaintiff.

John B. Gaffney, Wright, Pindulic & Hamelsky, LLP, Paramus, NJ, for Defendant.

**OPINION**

KUGLER, United States Magistrate Judge.

Presently before the Court is the motion by Mark R. Rosen, Esquire, attorney for Plaintiff Judith Weinstein, for an order remanding this action to New Jersey Superior Court, Law Division, Burlington County. Defendant Paul Revere Insurance Company ("Paul Revere") opposes this motion. After careful review of the parties' submissions and for the reasons set forth below, the Court denies the plaintiff's motion to remand.

## I. FACTUAL AND PROCEDURAL HISTORY

This action arises from an insurance coverage dispute. The plaintiff was employed by Radiology Associates of Graduate Hospital ("Radiology Associates") as a radiologist from June 1, 1993 until September 2, 1997. Plaintiff's Amended Complaint ¶ 1 ("Complaint"). Pursuant to the Employment Agreement ("Employment Agreement") entered into between Ms. Weinstein and Radiology Associates and as part of her benefits package, Ms. Weinstein was entitled to acquire an individual disability insurance policy in her name. Id. at ¶ 2. The Agreement provided that Radiology Associates would pay certain premiums on her behalf to purchase the policy. Id. In August 1993, Ms. Weinstein was presented with an application for an individual disability insurance policy by Ronald Lorch, an insurance broker for Radiology Associates. Id. at ¶ 3. Ms. Weinstein prepared the application listing herself as the owner. Id. On or about September 1, 1993, Ms. Weinstein obtained an individual disability insurance policy from Paul Revere ("Policy"). Id. at 6. On this date, Radiology Associates paid the balance of the premiums owed under the Policy for the remainder of 1993. Id. at ¶ 8. The Policy provided $1700 per month in disability benefits in the event plaintiff became disabled. Id. at ¶ 6.

In January 1994, Paul Revere notified Radiology Associates that the payment of premiums for its employees was in arrears. Id. at ¶ 10; Id. at Exhibit E. A second notice of past due accounts was sent to Radiology Associates in February 1994. See Defendant's Opposition Brief at Exhibit 4. Both of the notices identified Ms. Weinstein's Policy premiums as past due. When payments were not forthcoming, the Policy purportedly lapsed.

In July 1996, Ms. Weinstein suffered an injury rendering her disabled. Complaint at ¶ 11. On June 5, 1997, the plaintiff submitted to Paul Revere a Notice of Disability form indicating that she had been completely disabled from November 18, 1996 to the date of the Notice. Deft. Opp. Brief at 2 & Exhibit 5. The Notice stated that the cause

of her disability was bilateral brachial plexopathy. *Id.*

In response to Ms. Weinstein's Notice, Paul Revere informed the plaintiff by letter dated July 7, 1997 that the Policy had lapsed on January 1, 1994 before she allegedly became disabled and, thus, she could not recover benefits under the Policy. Complaint at Exhibit F. The letter also indicated that she could submit evidence to show that the policy remained current.

On January 15, 1998, the plaintiff filed suit against Paul Revere in Superior Court of New Jersey, Law Division, Burlington County, alleging state law causes of action for breach of insurance contract and bad faith denial of her insurance claim. Paul Revere removed the case to federal court on March 2, 1998 on the basis of federal question jurisdiction, contending that the disability policy owned by the employee was part of a group disability plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq. and, thus, that plaintiff's state law claims are preempted.

The plaintiff filed the instant motion on March 31, 1998. In this motion, the plaintiff challenges the removal of this action by the defendant on the basis that her state law claims are not preempted by ERISA, and moves to remand the case to state court for lack of federal subject matter jurisdiction. In addition, the plaintiff contends that, even if the plaintiff's claims are subject to ERISA, the state court holds concurrent jurisdiction over this matter and, thus, removal was not justified. Lastly, the plaintiff challenges the removal petition on the grounds that it was procedurally defective.

## II.  *DISCUSSION*

### A.  REMOVAL STANDARD

Generally, a defendant may remove a civil action filed in state court if the federal court

would have had original jurisdiction over the matter. 28 U.S.C. § 1441(b).[1] If there has been a procedural defect in the petition or if the federal court determines that it lacks subject matter jurisdiction over the case, the federal court may remand the case to state court. 28 U.S.C. 1447(c).[2] Removal statutes are strictly construed and all doubts are resolved in favor of remand. *See Batoff v. State Farm Ins.*, 977 F.2d 848, 851 (3d Cir. 1992); *Miller v. Riddle Memorial Hosp.*, No. 98–392, 1998 WL 272167, at *2 (E.D.Pa. May 28, 1998).

Federal district courts are courts of limited jurisdiction, and, as stated previously, a civil action brought in state court may be removed to federal court only if the plaintiff originally could have filed the complaint in federal court. 28 U.S.C. § 1441(b). Generally, a federal claim must appear on the face of a well-pleaded complaint in order to confer federal question jurisdiction for removal under section 1441. *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir.1995). The Supreme Court has recognized an exception to the well-pleaded complaint rule referred to as the "complete preemption exception." The complete preemption exception acknowledges Congress' authority to completely preempt certain causes of action under state law so that "any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

### B.  COVERAGE UNDER ERISA

The Court must determine whether the plaintiff's individual disability insurance policy is covered by ERISA. If the policy at issue falls within the purview of ERISA, it may be proper for this case to be decided by the federal district court. If, on the other

---

1. 28 U.S.C. § 1441(b), in pertinent part, provides:

   "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

2. 28 U.S.C. § 1447(c), in pertinent part, states:

   "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

hand, the policy was not an ERISA plan, then the federal courts have no jurisdiction and this matter must be remanded to the state court from which it was removed.

The Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq. is a comprehensive statute "that subjects a wide variety of employee benefit plans to complex and far-reaching rules designed to protect the integrity of those plans and the expectations of their participants and beneficiaries." *Crumley v. Stonhard, Inc.*, 920 F.Supp. 589, 592 (D.N.J.1996), *aff'd*, 106 F.3d 384 (3d Cir.1996)(quoting *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 929 (3d Cir. 1985)).

In the ERISA context, the Supreme Court has held that the complete preemption exception supports removal of state causes of action that fit within the scope of ERISA's civil enforcement provisions set forth at 29 U.S.C. § 1132. *Metropolitan Life Ins. Co.*, 481 U.S. at 66–67, 107 S.Ct. 1542. The statute permits, in relevant part, a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

■ The United States Court of Appeals for the Fifth Circuit has articulated a three-part test to determine whether an insurance coverage scheme falls within the purview of ERISA. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976–77 (5th Cir.1991); *Green v. Long Term Disability Plan for Employees of Denny's, Inc.*, No. 97–2250, 1998 WL 61044 (E.D.La. Feb.13, 1998). Although not explicitly adopted by the Third Circuit, elements of this test have been applied by district courts in this Circuit to determine whether a benefit plan is covered by ERISA. *Alston v. Atlantic Elec. Co.*, 962 F.Supp. 616 (D.N.J.1997); *Miller*, 1998 WL 272167. First, the Court must ascertain whether there is a "plan" as required by the ERISA definition of "employee welfare benefit plan" set forth at 29 U.S.C. § 1002(1); *Hansen*, 940 F.2d at 976–77. Second, the Court must determine whether the plan is excluded from coverage under ERISA by applicable Department of Labor regulations. *Id.* Finally, the Court must find whether the employer has "established or maintained" the plan as required by ERISA. *Id.* at 978.

1) *Existence of a Plan*

Ms. Weinstein argues that the disability insurance policy purchased for her by Radiology Associates is not part of an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(3). ERISA applies to any "employee benefit plan" if that plan is "established or maintained by any employer or employee organization engaged in interstate commerce, or in any industry or activity affecting interstate commerce." 29 U.S.C. § 1003(a).

There are two types of "employee benefit plans": "employee welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" governed by ERISA is defined as

> "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability or unemployment . . . ."

29 U.S.C. § 1002(1). Under certain circumstances, disability insurance benefits may fall within the definition of "employee welfare benefit plans," and thus qualify as a "plan" under the civil enforcement provision of ERISA. *See Green*, 1998 WL 61044 at *2.

■ In determining whether in fact a plan is an ERISA plan, the Third Circuit has acknowledged the inquiry set forth by the Eleventh Circuit in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982 (en banc)). *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 399 (3d Cir.1992). In *Donovan v. Dillingham*, the Eleventh Circuit held that, in ascertaining whether a plan, fund or program is an ERISA plan, a court must deter-

mine "whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." 688 F.2d at 1373. *See also Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 240 (5th Cir.1990).

■ The Agreement between Radiology Associates and Ms. Weinstein provides that, as a fringe benefit of employment, she was entitled to participate in "all medical, dental, life, disability and professional liability insurance programs offered by Employer to all professional employees." Employment Agreement at ¶ 4. Furthermore, the Agreement provides that Radiology Associates may purchase disability insurance for Employee. *Id.* at ¶ 8.

The test set forth in *Donovan* is satisfied in this case. A reasonable person could conclude that the intended benefit was disability insurance and that the beneficiaries were Radiology Associates' professional employees. Furthermore, the plaintiff states in her Complaint that Radiology Associates, who agreed to pay the premiums, was the source of funding for the policy. Complaint ¶ 2. In fact, the bills for the premiums were sent directly to Radiology Associates. As to the procedure for receiving benefits, a reasonable person could ascertain that the employees were expected to look to the provisions of the policy and the insurer to determine the eligibility requirements to receive benefits. In *Donovan,* the Court found that "[t]his common sense approach" adequately served employers' needs and was sufficient notice to a reasonable person of the procedures for receiving benefits. *Donovan,* 688 F.2d at 1374.

Consequently, the Court concludes that there was a "plan" as required by the definition of "employee welfare benefit plan." 29 U.S.C. § 1002(1).

### 2) *Department of Labor Regulations*

■ The Department of Labor has issued "safe harbor" regulations excluding certain group insurance plans from ERISA's definition of "employee welfare benefit plan."

A plan is not an employee welfare benefit plan when:

(1) [n]o contributions are made by an employer or employee organization;

(2) [p]articipation [in] the program is completely voluntary for employees or members;

(3) [t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

4) [t]he employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connections with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1998). All four factors must be met for a plan to fall within the regulation's safe harbor. "Because a removing defendant bears the burden of proving the existence of federal jurisdiction, *see Dukes,* 57 F.3d at 359, [Paul Revere] has the burden of proving on this Motion to Remand that the insurance program at issue here fails to meet at least one of the criteria." *Byard v. QualMed Plans for Health, Inc.,* 966 F.Supp. 354, 358 (E.D.Pa.1997).

Paul Revere has clearly satisfied its burden. It is undisputed that factor one is not satisfied. The plaintiff indicates in her Complaint and in her moving papers that, as part of her Employment Agreement, her employer Radiology Associates had assumed the obligation of paying the premiums associated with her disability insurance policy. Thus, since the regulation requires that all four factors must be met, the insurance policy at issue fails to fall within the safe harbor provision.

■ However, the fact that a plan is not excluded from ERISA by the Department of Labor regulation does not conclusively indicate that the plan is an ERISA plan. "[A] program that fails to satisfy the [safe harbor

provision] is not automatically deemed to have been 'established or maintained' by the employer, but, rather, is subject to further evaluation under the conventional tests." *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir.1997) (citing *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir.1995)).

### 3) *Establishing and Maintaining a Plan*

■ The Court must determine whether Radiology Associates established or maintained the plan. In order to establish or maintain a plan, there must be "some meaningful degree of participation by the employer in the creation or administration of the plan," and an " 'intent to provide its employees with a welfare benefit program.' " *Hansen*, 940 F.2d at 978 (quoting *Memorial Hosp. Sys.*, 904 F.2d at 241). The Supreme Court has held that ERISA applies to benefits where the employer's program includes an ongoing administrative scheme. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)(finding that one-time severance payment to employees did not create an employee welfare benefit plan).

■ "[N]o single act in itself necessarily constitutes the establishment of a plan, fund or program." *Donovan*, 688 F.2d at 1373. The purchase of insurance does not conclusively establish a plan, fund or program; however, it is evidence of the establishment of a plan, fund or program. *Id.* In addition, "the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund or program has been established." *Id.* Furthermore, the mere decision to extend benefits does not "establish" a plan within the meaning of ERISA; instead it is the "reality of a plan ... that is determinative." *Id.* A significant consideration is whether the employer intended to provide benefits on a regular and long-term basis. *Gaylor*, 112 F.3d at 464; *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1049 (10th Cir.1992).

■ Evaluated under these standards, the Court concludes that Radiology Associates insurance program was an ERISA plan. The record indicates that Radiology Associates purchased multiple disability insurance policies for the plaintiff and other professional employees which is *substantial evidence* of the establishment of a plan, fund or program. In addition, Radiology Associates agreed to pay the premiums on an on-going basis which suggests that the employer intended to provide benefits over the course of Ms. Weinstein's employment. Furthermore, Radiology Associates assumed some responsibility for the administration of the program by providing an insurance broker, Robert J. Lorch, to distribute application forms to employees who wanted to obtain insurance policies in their name. In fact, the administrative duties of the insurance broker appear to have extended beyond the mere distribution of application forms. Attachment C to the plaintiff's Amended Complaint includes a memo from the Assistant of Robert Lorch, identified as Shal Schallus, to Ms. Weinstein dated December 16, 1998 reminding her to complete an attached amendment to her original application form. In the memo, Mr. Schallus indicates that he was contacted by Paul Revere regarding the necessity of receiving Ms. Weinstein's amendment form as soon as possible. The broker's role as intermediary between Ms. Weinstein and Paul Revere indicates that Radiology Associates, by providing the insurance broker, assumed a role in the ongoing administration of the Policy.

In sum, the Court finds that Radiology Associates established or maintained an employee welfare benefit plan within the meaning of ERISA.

### C. PREEMPTION OF STATE LAW CLAIMS

■ The plaintiff argues that, even if the Policy is deemed to fall within an ERISA plan, her state claims are protected from ERISA preemption by the ERISA savings clause. The ERISA savings clause provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The plaintiff contends that because her policy was issued by an insurer, which is presumably bound by state laws

regulating the business of insurance, that her claims are saved from preemption.

■■■ Plaintiff's argument, however, must be rejected. State law claims that fall within ERISA's civil enforcement provisions in section 502(a)[3] are completely preempted such that removal to a federal court is appropriate. *See Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171–72 (3d Cir.1997). ERISA contains a broad exemption provision which states that ERISA "supercedes any and all state laws insofar as they may ... relate to any employee benefit plan." This exemption clause "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *Crumley*, 920 F.Supp. at 593–94 (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)). A law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Thus, plaintiff's state law claims are preempted by ERISA if such claims "relate to" an employee benefit plan covered by ERISA. *Crumley*, 920 F.Supp. at 594; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Courts have found state common law tort and breach of contract actions preempted by ERISA. *Pilot Life*, 481 U.S. at 41, 107 S.Ct. 1549; *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262 (10th Cir.1988); *Nechero v. Provident Life & Accident Ins. Co.*, 795 F.Supp. 374 (D.N.M.1992). In addition, bad faith insurance claims also have been found to be preempted. *See Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1119 (10th Cir.1991); *Nechero*, 795 F.Supp. at 381.

In this case, Ms. Weinstein asserts claims for breach of contract and bad faith denial of insurance claim to recover benefits due to her under the terms of the plan and to enforce her rights under the plan. These claims necessarily relate to an alleged improper processing of a benefits claim under a plan covered by ERISA and do not relate to insurance regulation. Thus, the Court finds that the savings clause does not apply to these claims and, thus, each of the state claims asserted by Ms. Weinstein are preempted by ERISA. *See Pilot Life*, 481 U.S. at 47–48, 107 S.Ct. 1549.

### D. CONCURRENT JURISDICTION

■■■ The plaintiff argues that section 502(e)(1) of ERISA grants concurrent jurisdiction between federal and state courts to hear claims brought under section 502(a)(1)(b) and, thus, that removal was improper. Section 502(e)(1) provides, *inter alia*, that "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) ... of subsection (a) of this section."

■■■ The removal statute provides that any civil action of which the district courts have original jurisdiction under federal law may be removed. 28 U.S.C. § 1441(b). Section 1441(b) does not prohibit removal if the state and federal courts share jurisdiction. Accordingly, if a federal statute does not prohibit removal, concurrent jurisdiction is not a bar to removal and is not grounds for remand to state court. *McArthur v. Carmichael*, 1998 WL 146233, *2, No. 97–8102, 1998 U.S. Dist. LEXIS 3704, at *6 (S.D.N.Y. March 25, 1998); *Dorsey v. City of Detroit*, 858 F.2d 338, 341 (6th Cir.1988). Because section 502(e) of ERISA grants concurrent jurisdiction without prohibiting removal, the Court finds that removal was proper.

### E. NOTICE OF REMOVAL

Section 1446(b) of Title 28 of the United States Code provides that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting

---

**3.** Section 502(a) provides, in pertinent part, that:
A civil action may be brought -
(1) by a participant or beneficiary ...
(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
29 U.S.C. § 1132(a)(1)(B).

forth the claim for relief." 28 U.S.C. 1446(b). While the time limitations of 28 U.S.C. § 1446(b) are not jurisdictional, they are mandatory and are to be strictly construed when asserted by a party. *See Mountain Ridge State Bank v. Investor Funding Corp.*, 763 F.Supp. 1282, 1287 (D.N.J.1991); *United States ex rel. Walker v. Gunn*, 511 F.2d 1024 (9th Cir.1975). If the court determines that removal was procedurally improper, such as outside the thirty day removal period, it may remand the case to state court. *See* 28 U.S.C. § 1447(c); *Groh v. Groh*, 889 F.Supp. 166, 169 (D.N.J.1995).

Paul Revere was served with the Complaint on January 30, 1998 and filed the Notice of Removal on March 2, 1998, thirty-one (31) days later. Paul Revere maintains that the Notice of Removal was timely filed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure which provides the manner for computing time under the Federal Rules of Civil Procedure, the local rules, orders of court or any applicable statute.

Applying the principles for computation of time set forth in Rule 6(a), the Court finds that Paul Revere's Notice of Removal was timely filed. Under Rule 6(a), the day of the act, event or default from which the designated period of time begins to run shall not be included. Thus, since the Complaint was served on January 30th, the thirty day removal period did not begin to run until January 31st and expired on March 2nd, the date the Notice was filed. Additionally, Rule 6(a) provides that the last day of the time period to be computed is not counted if it falls on a Saturday or Sunday. In such an event, the period runs until the next weekday. In this action, the thirtieth day after January 30th fell on Sunday, March 1st and, therefore, the removal period ran until March 2, 1998.

■ The plaintiff concedes that the filing of the Notice of Removal was proper under Rule 6(a). However, plaintiff argues that Rule 6(a) does not apply to the computation of time under 28 U.S.C. § 1446(b). In support of its argument, the plaintiff cites the Rules Enabling Act. The Rules Enabling Act ("Act") delegates Congress' authority to regulate matters of practice and procedure in the federal courts to the Supreme Court. 28

U.S.C. § 2072(b). The second sentence of 28 U.S.C. § 2072(b), referred to as the abrogation clause, provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). The abrogation clause has been interpreted to trump statutes passed before the effective date of any federal rule passed pursuant to the Act. *Jackson v. Stinnett*, 102 F.3d 132, 135 (5th Cir.1996). Statutes passed after the effective date of a rule passed pursuant to the Act repeal the rule to the extent that the statute conflicts with the rule. *Id.* at 134–35.

The plaintiff asserts that, because the removal statute was enacted in 1948, eleven years after the adoption of Rule 6(a), that the Court must apply the second sentence of section 2072(b) to find that Rule 6(a) is repealed to the extent that it would allow for an extension of the thirty day time limit set forth in section 1446(b).

■ As the defendant aptly points out in its motion papers, the plaintiff's argument is flawed. A statute passed after the adoption of a rule repeals the rule only to the extent that the rule actually *conflicts* with the statute. Although the removal statute does not provide a method for computing the thirty day removal period, its language does not prohibit any of the principles for computation of time set forth in Rule 6(a). Accordingly, the Court finds that the provisions of section 1446(b) and Fed.R.Civ.P. 6(a) are not in conflict and, therefore, the Act does not apply. In fact, many courts have applied Rule 6(a) to the computation of the thirty day removal period established in section 1446(b). *Johnson v. Harper*, 66 F.R.D. 103 (E.D.Tenn. 1975) (applying Rule 6 when the last day of the removal period fell on a Saturday); *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l Inc.*, 842 F.2d 946, 949 n. 3 (7th Cir.1987) (computing 30 day period set forth in section 1446(b) under Rule 6(a)).

### III. *CONCLUSION*

For the foregoing reasons, the plaintiff's motion to remand this action to the Superior

Court of New Jersey, Law Division, Burlington County, is denied.