**Robert TIEMANN and Thelma Tiemann, his wife, Plaintiffs,**

v.

**U.S. HEALTHCARE INC. and Corporate Health Administrators, Inc. and Health Maintenance Organization of Pennsylvania and Family Medical Associates of Abington, Inc. and Norman M. Werther, M.D. and Evan Kessler, D.O. and Anthony G. Wydan, M.D., Defendants.**

No. CIV. 99–5885.

United States District Court, E.D. Pennsylvania.

Jan. 11, 2000.

Anthony M. Di Massa, Di Massa and Associates, Ltd., Philadelphia, PA, for Robert Tiemann, Thelma Tiemann, Plaintiffs.

Michael A. Bowman, Blue Bell, Marcy H. Landis, White and Williams, Philadel-

phia, PA, for U.S. Healthcare, Inc., Corporate Health Administrators, Inc., Health Maintenance Organization of Pennsylvania, Family Medical Associates of Abington, Inc., Norman M. Werther, M.D., Evan Kessler, D.O., Anthony G. Wydan, M.D., Defendants.

### MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

## I. INTRODUCTION

Plaintiffs Robert Tiemann and Thelma Tiemann, his wife, originally brought this action in the Court of Common Pleas of Philadelphia County on June 10, 1999, by the filing of a Praecipe to Issue Writ of Summons and a Writ of Summons. It was subsequently removed to the U.S. District Court for the Eastern District of Pennsylvania. Defendants have filed a motion with this court to have the action dismissed for failure to state a claim upon which relief can be granted; Plaintiffs have filed a motion with this court to have the action remanded to the Court of Common Pleas.

## II. FACTS [1]

Between 1991 and 1995, Plaintiff Robert Tiemann was an employee under a group health insurance plan provided by Defendants U.S. Healthcare Inc., Corporate Health Administrators, Inc. and Health Maintenance Organization of Pennsylvania (the "Moving Defendants") [2] through Plaintiff's employment. Moving Defendants, in exchange for premium payments, provided such group health insurance coverage to Mr. Tiemann pursuant to a group

---

1. These are the relevant factual allegations contained within Plaintiffs' Complaint. As we shall discuss further in Section IV(A), *infra*, when considering a Rule 12(b)(6) motion to dismiss, we must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Powell v. Ridge*, No. CIV.A. 98–1223, 1998 WL 804727, at *3 (E.D.Pa. Nov.19, 1998) (*quoting*

*Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990) (citation omitted)).

2. Moving Defendants indicated in their Motion to Dismiss that "U.S. Healthcare Inc." and "Health Maintenance Organization of Pennsylvania" are fictitious names utilized by United States Healthcare Systems, Inc.

health insurance policy (the "Plan"). Complaint, at ¶¶ 9–10.

The other parties defendant, the individual physicians and Family Medical Associates of Abington, Inc. (the "Physician Defendants", and, together with the Moving Defendants, the "Defendants"), were participating physicians and primary health care providers of the Plan and rendered medical treatment and health care services to Mr. Tiemann in return for compensation received from Moving Defendants pursuant to the Plan. Complaint, at ¶ 11.

During the course of the provision of such services, Defendants learned, by September of 1991, that Mr. Tiemann suffered from emphysema and the progression of the emphysematous condition of his lungs. Plaintiffs allege either the failure of Defendants to disclose the nature of his medical condition or the misrepresentation of Mr. Tiemann's condition, or both. Mr. Tiemann has suffered from a genetic disorder, Alpha–1 antitrypsin deficiency disorder, a chronic, progressive disease that caused emphysema and irreversible lung damage in Mr. Tiemann. Complaint, at ¶¶ 12–13.

In late 1998, Mr. Tiemann was first notified of this diagnosis. Mr. Tiemann has required and sought out medical treatment, including Alpha–1 antitrypsin replacement therapy and placement in a lung transplant program. Complaint, at ¶ 14.

As a result of Defendants' malfeasance and nonfeasance, Mr. Tiemann's medical condition has deteriorated irreversibly. Early detection of Mr. Tiemann's genetic disorder

> would have permitted the implementation and rendition of necessary medical treatment, including the rendition of Alpha–1 antitrypsin replacement therapy which would have prevented the deterioration of the condition of [Mr. Tiemann's] lungs and the extent of irreversible lung damage, which now requires and/or which in the future will require

the rendition of lung transplantation for survival.

Complaint, at ¶ 15.

Plaintiffs further allege, *inter alia*, physical pain, suffering, mental anguish, financial loss, loss of life's pleasures, and loss of earnings, both now and in the future. Their Complaint lists counts of negligence, breach of contract and loss of consortium.

## III.   PROCEDURAL HISTORY

On June 10, 1999, Plaintiffs filed a Praecipe to Issue Writ of Summons and a Writ of Summons in the Court of Common Pleas, Philadelphia County. On June 22, 1999, Moving Defendants were served by the Sheriff of Montgomery County. The Physician Defendants were served with original process as well.

As a result, counsel for the Physician Defendants entered their appearances in this matter from the end of June to mid-August. On August 25, 1999, the Court of Common Pleas entered a Case Management Order, which scheduled a case management conference for October 1, 1999. However, the Moving Defendants had still not entered their appearances.

On September 9, 1999, Plaintiffs filed their Complaint with the Prothonotary's Office and forwarded a copy of the filed Complaint, along with a copy of the Scheduling Order and Case Management Conference Memorandum to all counsel of record and to all unrepresented parties (*i.e.,* the Moving Defendants).

On September 27, 1999, Plaintiffs' counsel made certain discovery requests to Defendants and on October 1, 1999, all counsel of record attended the case management conference. Subsequent to the conference, the Court of Common Pleas issued a Case Management Order. On October 15, 1999, Plaintiffs' counsel responded to Physician Defendants' discovery requests. These parties began planning a deposition schedule. The Physician Defendants filed Preliminary Objections to Plaintiffs' punitive damages and breach of

contract claims; Plaintiffs filed Replies on November 8 and 12, 1999.[3]

On October 26, 1999 Plaintiffs' counsel was telephoned by Tarleton David Williams, Jr., who identified himself as the Moving Defendants' attorney in this matter and requested a faxed copy of the Complaint. Plaintiffs' counsel fulfilled this request and forwarded all other relevant documentation by overnight courier. On November 15, 1999, two other attorneys, Charles M. O'Donnell and Michael A. Bowman, entered their appearances on behalf of U.S. Healthcare Inc.

On November 23, 1999, Bowman, on behalf of the Moving Defendants, filed a Notice of Removal of this lawsuit from the Court of Common Pleas to the U.S. District Court, E.D. of Pa., on the basis of certain questions of federal law being implicated. The next day, November 24, 1999, Bowman filed a Praecipe to Enter the Notice of Removal with the Court of Common Pleas, Philadelphia County, and followed with the filing in federal court of "Defendants' U.S. Healthcare Systems, Inc. and Corporate Health Administrators Inc.'s Motion to Dismiss Plaintiffs' Complaint", on Rule 12(b)(6) grounds ("Motion to Dismiss"), claiming federal preemption. "Plaintiffs' Response to Defendants U.S. Healthcare Systems, Inc. and Corporate health Administrators, Inc.'s Motion to Dismiss Plaintiffs' Complaint" ("Plaintiffs' Response") was filed on December 16, 1999. Plaintiffs followed this with a motion of their own: "Plaintiffs' Motion for Remand and Application of Sanctions", filed December 22, 1999 ("Motion for Remand"). On December 29, 1999, two physician-defendants filed a "Motion to Dismiss of Defendants, Evan Kessler, D.O. and Anthony G. Wydan, M.D. for Failure to State a Claim Upon Which Relief Can Be Granted as to Plaintiffs' Claim for Punitive Damages". Finally, Moving Defendants filed Defendants' U.S. Healthcare

Systems, Inc. and Corporate Health Administrators Inc.'s Reply in Support of Their Motion to Dismiss Plaintiffs' Complaint ("Moving Defendants' Reply"), which was filed on January 6, 2000.

For the reasons stated below, Defendant's Motion to Dismiss will be DENIED and Plaintiff's Motion for Remand will be GRANTED in its entirety. The physician-defendants' Motion to Dismiss will be DENIED as moot.

## IV. STANDARD OF REVIEW

Moving Defendants are before this court with their Motion to Dismiss Plaintiffs' action pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, Plaintiffs, through their Motion for Remand, have moved to send this case back to the Court of Common Pleas, Philadelphia County.

As we find that removal was improper, we shall GRANT Plaintiffs' Motion for Remand. For the reasons discussed in connection with our granting of Plaintiffs' Motion for Remand, *infra*, we shall also DENY Moving Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Nonetheless, we shall briefly review the standard for dismissal for failure to state a cause of action upon which relief can be granted.

### (A) Rule 12(b)(6)

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that a plaintiff has not stated a claim upon which relief can be granted. *See, e.g., Cohen v. Kurtzman*, 45 F.Supp.2d 423, 429 (D.N.J. 1999) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991)).

When considering such a motion to dismiss, we must "accept as true the facts alleged in the complaint and all reasonable

---

**3.** The Court of Common Pleas sustained Physician Defendants' Preliminary Objections by Orders dated November 29, 1999; however, after the state court learned that the case had been removed, it vacated those Orders on December 7, 1999.

inferences that can be drawn from them. Dismissal under Rule 12(b)(6) ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Powell v. Ridge,* No. CIV.A. 98–1223, 1998 WL 804727, at *3 (E.D.Pa. Nov.19, 1998) (*quoting Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990) (citation omitted)).

Under the present circumstances, Moving Defendants bear the burden of demonstrating that Plaintiffs have not stated a claim upon which relief can be granted. *Cohen,* 45 F.Supp.2d at 429. Further, we are bound to "accept as true the facts alleged" in Plaintiffs' Complaint "and all reasonable inferences that can be drawn from them." *Powell,* 1998 WL 804727, at *3. Based on the analysis revealed in our discussion of the lack of ERISA complete preemption, *infra,* we do not believe that "no relief could be granted under any set of facts that could be proved." *Id.* Therefore, for reasons that will become eminently clear, we shall deny Moving Defendants' request for dismissal under Rule 12(b)(6).

**(B) Remand Standard**

The statute that prescribes removal procedure states:

> [t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b). Under the subsequent section, "Procedure after removal generally":

> [a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal....

28 U.S.C. § 1447(c).

Further, ignoring an exception not apposite to the case at bar, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ...." 28 U.S.C. § 1447(d). The U.S. Supreme Court has clarified this statutory language in holding that only "remand orders issued under [28 U.S.C. § 1447(c) ] and invoking the grounds specified therein ... are immune from review under § 1447(d)." *In re U.S. Healthcare,* 159 F.3d 142, 146 (3d Cir.1998) (*quoting Thermtron Prods. Inc. v. Hermansdorfer,* 423 U.S. 336, 346, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976)). In other words, in order for our decision to remand a case to be immune from review, it would have to be issued due to a defect in removal procedure or the lack of subject matter jurisdiction. Of course, it would be for the Third Circuit Court of Appeals (the "Third Circuit") to decide this question in any appeal.

We also note that "[r]emoval statutes are strictly construed and all doubts are resolved in favor of remand." *Weinstein v. Paul Revere Ins. Co.,* 15 F.Supp.2d 552, 555 (D.N.J.1998); *see also Batoff v. State Farm Ins.,* 977 F.2d 848, 851 (3d Cir.1992); *Miller v. Riddle Memorial Hosp.,* No. 98–392, 1998 WL 272167, at *2 (E.D.Pa. May 28, 1998) (both cited by *Weinstein* ). We shall not lose sight of this legal standard in our review of the facts in the case at bar.

There would appear to be a patent defect in removal procedure in the case at bar. Moving Defendants filed their Notice of Removal on November 23, 1999, much later than the thirty day period prescribed by statute. *See* 28 U.S.C. § 1446(b). One

might conclude that under no interpretation of that statutory provision could the notice of removal have been proper after October 11, 1999, the first business day following the date thirty days after the date the Plaintiffs filed their Complaint with the Prothonotary's Office and forwarded copies to all counsel of record and to all unrepresented parties. *See* Plaintiffs' Response, at 3; 28 U.S.C. § 1446(b); *see also* Fed.R.Civ.P. 6(a).

Plaintiffs, on the other hand, filed their Motion for Remand within the thirty day window prescribed by Section 1447(c). They filed their Motion for Remand on December 22, 1999, which was within thirty days of the date of "the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c).

Under this analysis, as it would be the procedure that Moving Defendants followed that was defective, while Plaintiffs' procedure was proper, we would be confident that our holding would not be scrutinized with the lens of detraction. *See* 28 U.S.C. § 1447(d); *Thermtron Prods.*, 423 U.S. at 346, 96 S.Ct. 584.

However, we shall not rest our holding on these statutory grounds. We recognize that in Moving Defendants' Reply, they contest Plaintiffs' assertion that removal was not timely. Moving Defendants maintain that, contrary to Plaintiffs' representations, they did not receive a "copy of the initial pleading setting forth the claim for relief ...", 28 U.S.C. § 1446(b), until October 26, 1999. *See* Moving Defendants' Reply, at 2–3; *see also* Declaration of Tarleton David Williams, Jr. As our holding in the case at bar does not rely on a defect in removal procedure, but rather, on a lack of federal subject matter jurisdiction, we shall not delve further into this issue and shall now proceed to the question of ERISA preemption.

### (C) ERISA Preemption

Moving Defendants argue in their Motion to Dismiss that Plaintiffs' claims against Moving Defendants are preempted by ERISA. Motion to Dismiss, at 3–8. Plaintiffs argue to the contrary and move to remand the case on the basis of a lack of federal question subject matter jurisdiction.

### (1) Complete Preemption Doctrine

Generally, a federal claim must appear "on the face of a well-pleaded complaint in order to confer federal question jurisdiction for removal under section 1441." *Weinstein*, 15 F.Supp.2d at 555 (*citing Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir.1995)). However, there is an exception to this well-pleaded complaint rule, know as the "complete preemption exception." *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). There, the Supreme Court recognizes that Congress has the authority to "completely preempt certain causes of action under state law so that 'any civil complaint raising this select group of claims is necessarily federal in character.'" *Weinstein*, 15 F.Supp.2d at 555 (*quoting Metropolitan Life Ins.*, 481 U.S. at 63–64, 107 S.Ct. 1542). The question for us to decide is whether the complete preemption exception would apply in the instant case, notwithstanding the common law tort and breach of contract causes of action advanced by Plaintiffs.

We note that the complete preemption doctrine is utilized when

> the pre-emptive force of [the federal statutory provision] is so powerful as to displace entirely any state cause of action [addressed by the federal statute]. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal provision].

*Dukes*, 57 F.3d at 354 (*quoting Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

To begin with, we shall assume that the Plan in question here falls within ERISA's

coverage. Where ERISA is concerned, the complete preemption exception applies to state law causes of action that fall within ERISA's civil enforcement mechanism, which is described at 29 U.S.C. § 1132. *See Metropolitan Life Ins.*, 481 U.S. at 66–67, 107 S.Ct. 1542.

The civil enforcement provision of the ERISA statute allows plan participants or beneficiaries to bring an action "to recover benefits due to [a participant or beneficiary] under the terms of [such person's] plan, or to clarify ... rights to future benefits under the terms of the plan ...." 29 U.S.C. § 1132(a)(1)(B) (ERISA section 502(a)(1)(B)). Therefore, "[s]tate law claims which fall outside the scope of ERISA section 502(a)(1)(B) are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles ...." *Dukes*, 57 F.3d at 355.

*(2) Preemption vs. Removal*

That the complete-preemption exception may apply in a given circumstance, namely, "for state law claims which fit within the scope of § 502[,] by no means implies that all claims preempted by ERISA are subject to removal." *Id.* "Removal and preemption are two distinct concepts." *Id.* (*quoting Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir.1995)). That is because there is another provision within ERISA that deals with preemption more generally, which covers a broader swatch of the ERISA fabric, but does not have the effect of overturning the well-pleaded complaint rule. That rule is nullified only by *complete* preemption, under ERISA's civil enforcement mechanism. 29 U.S.C. § 1132(a)(1)(B). As *Dukes* goes on to state:

> Section 514 of ERISA defines the scope of ERISA preemption, providing that ERISA supersede[s] any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in [§ 4(a) of ERISA] and not exempt under [§ 4(b) of ERISA].

The *Metropolitan Life* complete-preemption exception, on the other hand, is concerned with a more limited set of state laws, those which fall within the scope of ERISA's civil enforcement provision, § 502. State law claims which fall outside of the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles established in *Metropolitan Life*.

*Dukes*, 57 F.3d at 355 (internal quotations and related references omitted).

*Dukes* continues its detailed discussion of the distinctions between these two ERISA provisions:

> The difference between preemption and complete preemption is important. When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved. *Franchise Tax Bd.*, 463 U.S. at 4, 27–28[103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)] ...; *Allstate*, 879 F.2d at 94; *Warner*, 46 F.3d at 533–35; *Lupo*, 28 F.3d at 274.

*Dukes*, 57 F.3d at 355. In other words, where preemption is based only on § 514, we are without removal jurisdiction and must remand to the state court for resolution of the dispute.

## V. DISCUSSION

Moving Defendants maintain that Plaintiffs' state law claims fall within the scope of 29 U.S.C. § 1132(a)(1)(B), thus allowing the complete-preemption doctrine to permit removal. We are not inclined to agree.

*Dukes* assumed, without deciding, that the plan benefits are not merely "the plan participants' or beneficiaries' memberships

in the respective HMOs ... [, but rather, that the plan benefits encompassed] the medical care provided ... for the purposes of ERISA." *Dukes*, 57 F.3d at 356. We, too, shall assume that Moving Defendants arrange for the delivery of Plan benefits, such that "removal jurisdiction would exist if the plaintiffs were alleging that the [Moving Defendants] refused to provide the services to which membership entitled them." *Id.*

As in *Dukes*, we, too, conclude nevertheless that removal was improper here. Where, as here, the Plaintiffs' claims (a) attack the *quality* of benefits received, and not the *quantity* (*i.e.*, a "claim that the plan erroneously withheld benefits due", *id.*) of benefits received, (b) do not ask for the enforcement of their rights under the terms of the plan, and (c) do not ask for clarification of their rights to future benefits, we shall find that Plaintiffs' claims have fallen outside the scope of ERISA's civil enforcement provision and we shall remand to the Court of Common Pleas, Philadelphia County. *See id.*; 29 U.S.C. § 1132(a)(1)(B). As we do not believe that either item (b) or (c) listed above is implicated in the instant case, and Moving Defendants do not appear to argue for anything other than item (a) (alleging that Plaintiffs' claims attack the quantity of benefits received), our analysis shall focus on item (a).

**(A) No Claim of Failure to Provide Benefits Due**

As in *Dukes*, there is no allegation in Plaintiffs' Complaint that Plan benefits due were erroneously withheld. Nearly all of the claims made in Plaintiffs' Complaint concerning the Moving Defendants center around common law negligence, resulting either directly or through agency principles (*see* Complaint, at ¶¶ 24–28), and breach of contract allegations (*see* Complaint, at ¶¶ 29–32). Plaintiffs do not aver that the Moving Defendants refused to provide certain tests because the Plan would not pay for such tests. Nor do they

claim that Robert Tiemann's poor health is the result of the Plan's "refusal to pay for or otherwise provide for medical services." *Dukes*, 57 F.3d at 357. We find the situation in the case at bar closely parallels *Dukes*:

> Instead of claiming that the welfare plan[ ] in any way withheld some quantum of plan benefits due, the plaintiffs ... complain about the low quality of the medical treatment ... actually received and argue that the ... HMO should be held liable under agency and negligence principles.

*Dukes*, 57 F.3d at 357. This kind of claim is not a claim under the ERISA civil enforcement provision to "recover benefits due ... under the terms of [the] plan." *Id.*; *see* 29 U.S.C. § 1132(a)(1)(B).

The Third Circuit gives a detailed explanation of the importance of respecting an existing state regulatory scheme safeguarding the quality of plan benefits, while recognizing the strictly federal terrain of deciding whether the benefits due under a plan were in fact provided:

> Nor does anything in the legislative history, structure, or purpose of ERISA suggest that Congress viewed § 502(a)(1)(B) as creating a remedy for a participant injured by medical malpractice. When Congress enacted ERISA it was concerned in large part with the various mechanisms and institutions involved in the funding and payment of plan benefits. That is, Congress was concerned "that owing to the inadequacy of current minimum [financial and administrative] standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered." § 2, 29 U.S.C. § 1001(a). Thus, Congress sought to assure that promised benefits would be available when plan participants had need of them and § 502 was intended to provide each individual participant with a remedy in the event that promises made by the plan were not kept. We find nothing in the legislative

history suggesting that § 502 was intended as a part of a federal scheme to control the quality of the benefits received by plan participants. Quality control of benefits, such as the health care benefits provided here, is a field traditionally occupied by state regulation and we interpret the silence of Congress as reflecting an intent that it remain such. *See, e.g., Travelers Ins. Co.,* at 659, 115 S.Ct. at 1678–79 (noting that while quality standards and work place regulations in the context of hospital services will indirectly affect the sorts of benefits an ERISA plan can afford, they have traditionally been left to the states, and there is no indication in ERISA that Congress chose to displace general health care regulation by the states).

*Dukes,* 57 F.3d at 357.

## (B)  Complaint ¶¶ 27(c)-(d), 31(c)

We recognize that a few of Plaintiffs' claims in their Complaint do, indeed, present a much closer question for us. Specifically, Plaintiffs aver that Moving Defendants' negligence consisted, *inter alia,* of:

[t]he promulgation of rules, regulations and standards for participating physicians and health care providers that penalized participating physicians and/or health care providers for referring patients for additional required medical treatment, where the [Moving] Defendants knew and/or should have known that the enforcement of the stated rules, regulations and/or standards would lead to the rendition of substandard medical care and deviations from the applicable standard of care with resulting patient injuries [and][t]he promulgation of rules, regulations and standards for participating physicians and health care providers that rewarded participating physicians and health care providers for decreasing and/or minimizing required medical services, treatments, diagnostics and referrals to specialists where the [Moving] Defendants knew and/or should have known that the enforcement of such rules, regulations and/or standards

would lead to the rendition of substandard medical care and deviations from the applicable standard of care with resulting patient injuries . . . .

Complaint, at ¶ 27(c)-(d).  Further, Plaintiffs also claimed that Moving Defendants "breached their contractual obligation to provide medical and primary care services" by, *inter alia:*

[p]romulgating, implementing and/or following a schedule of rules, regulations and/or standards in the rendition of medical and primary care services that violated applicable industry standards and applicable law.

*Id.* at ¶ 31(c).

Specifically, Moving Defendants refer to these paragraphs of Plaintiffs' Complaint in their Motion to Dismiss, maintaining that by their nature "these claims are completely preempted by the civil enforcement mechanism set forth in Section 502(a) of ERISA."  Motion to Dismiss, at ¶¶ 15–16.

### (1)  § 514 Preemption Analysis

Moving Defendants would have been more likely to persuade this court to accept its position that Plaintiffs' claims should be preempted by ERISA, had this case been brought during the 1980s or early 1990s.  During that period, there were several Supreme Court cases that gave the ERISA preemption provision a broad reach.  The words of that provision

were to be given their "broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan."

*Pappas v. Asbel,* 555 Pa. 342, 724 A.2d 889, 892 (1998) (*quoting Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)); *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).  In most of the Supreme Court

cases during that period that dealt with ERISA preemption, the Supreme Court found that the state law claims "had some 'connection with' or 'reference to' the ERISA plan." *Pappas*, 724 A.2d at 892 (quotations in the original).

Here, we are dealing with a question of Section 514 of ERISA, rather than Section 502(a), which is the complete-preemption exception. Nonetheless, we find the shift in this area that came in the mid–1990s not to be without significance in the complete-preemption context. *See infra.*

The Supreme Court altered its previous approach in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). As *Pappas* relates:

> The Court recognized that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.'" *Id.* at 655, 115 S.Ct. 1671 .... The Court reasoned that the language of the preemption provision is so extensive that if the Court were to look merely to the bare language of the provision, the provision would for all intents and purposes be without limit—an intent which the Court would not ascribe to Congress.

*Pappas*, 724 A.2d at 892 (*citing* the *Travelers* case). Importantly for us, "[p]re-emption does not occur ... if the state law [*i.e.*, negligence/breach of contract] has only a tenuous, remote, or peripheral connection with covered plans, as in the cases with many laws of general applicability." *Travelers*, 514 U.S. at 661, 115 S.Ct. 1671. The Supreme Court noted that "nothing in

the language of [ERISA] or in the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *Id.*

Subsequent Supreme Court cases have solidified the *Travelers* approach. *See, e.g., California Division of Labor Standards Enforcement v. Dillingham Construction, NA., Inc.*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); *De Buono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). For this reason, *Pappas* concluded that negligence claims against an HMO do not "relate to" an ERISA plan and thus are not preempted by ERISA. *Pappas*, 724 A.2d at 893. "As noted by *Travelers*, Congress did not intend to preempt state laws which govern the provision of safe medical care." *Id.* (*citing Travelers*, 514 U.S. at 661, 115 S.Ct. 1671). In sum:

> Claims that an HMO was negligent when it provided contractually-guaranteed medical benefits in such a dilatory fashion that the patient was injured indisputably are intertwined with the provision of safe medical care. We believe that it would be highly questionable for us to find that these claims were preempted when the United States Supreme Court has stated that there was no intent on the part of Congress to preempt state laws concerning the regulation of the provision of safe medical care.

*Pappas*, 724 A.2d at 893. We find the situation in the instant case closely, though not entirely, related to the *Pappas* circumstances.[4] Further, we note that based on

---

4. While the underlying issues are closely analogous, Plaintiffs here, unlike plaintiffs in *Pappas*, originally brought suit against the HMO (Moving Defendants), and included claims in their Complaint that Moving Defendants provided incentives and disincentives for "participating physicians and/or health care providers" to provide "substandard medical care ...." Complaint, at ¶ 27(c)-(d). In *Pappas*, by

way of contrast, the HMO was brought in by an original defendant; indeed, plaintiffs did not make any claims against the HMO. However, we are not persuaded that this distinction should affect our ruling. In particular, our discussion surrounding *U.S. Healthcare*, *infra*, will address the particular facts and circumstances of the case at bar in the complete-preemption context. Further, we do not

*Travelers* and its progeny, Moving Defendants' reliance on *Kearney v. U.S. Healthcare, Inc.,* 859 F.Supp. 182 (E.D.Pa.1994), is misplaced.

### (2) § 502 Complete Preemption Analysis

As we discussed, *supra, Pappas* did not directly deal with the complete preemption doctrine of ERISA § 502(a), but rather with § 514, which defines ERISA preemption outside ERISA's civil enforcement context. However, a recent Third Circuit decision, *In re U.S. Healthcare, Inc.,* 193 F.3d 151 (3d Cir.1999), touches on precisely the question we are facing in the instant suit: namely, how far *Dukes'* quantity versus quality of benefits distinction will take us.

In *U.S. Healthcare,* participants in an ERISA plan brought a state court medical malpractice action against an HMO after the death of their newborn child. The HMO removed the action to the U.S. District Court, District of New Jersey, where one count was dismissed and the remaining counts were remanded to state court. Both parties appealed. The Third Circuit held that none of plaintiffs' claims was completely preempted by ERISA and remanded all counts to the state court.

*U.S. Healthcare* is instructive in clarifying that the particular role an HMO assumes will determine whether the complete preemption provision of ERISA is implicated. As a complicating matter, an HMO "may have assumed both the role as a plan administrator and the separate role as a provider of medical services." *Id.* at 162. It is necessary as a preliminary matter to determine which role an HMO assumed in order to determine whether

complete preemption is found. The Third Circuit provides much guidance in solving this problem:

> As an administrator overseeing an ERISA plan, an HMO will have administrative responsibilities over the elements of the plan, including determining eligibility for benefits, calculating those benefits, disbursing them to the participant, monitoring available funds, and keeping records. As we held in *Dukes,* claims that fall within the essence of the administrator's activities in this regard fall within section 502(a)(1)(B) and are completely preempted.

> In contrast, as noted by the Secretary, when the HMO acts under the ERISA plan as a health care provider, it arranges and provides medical treatment, directly or through contracts with hospitals, doctors, or nurses. *See Dukes,* 57 F.3d at 361; *see also Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1329–34 (5th Cir.1992) (recognizing that HMOs act as both health care providers and plan administrators). In performing these activities, the HMO is not acting in its capacity as a plan administrator but as a provider of health care, subject to the prevailing state standard of care. For obvious reasons, U.S. Healthcare contends that all of the Baumans' claims against it fall into the administrative category, which are completely preempted, and that therefore the remand of the three counts to state court was erroneous.

*U.S. Healthcare,* 193 F.3d at 162. The Third Circuit found it "significant that none of these three counts as pled alleges a failure to provide or authorize benefits

---

wish to allow our rulings to depend too greatly on the technicalities of the pleadings made by a litigant. Thus, while we will recognize the effect of an exception to the well-pleaded complaint rule, where possible we will avoid penalizing a litigant solely on the artfulness (or inartfulness) of the pleadings contained within the complaint. *See* Fed.R.Civ.P. 1, 8(f). However, we believe that the claims made by Plaintiffs here at ¶¶ 27(c)-(d) and

31(c) do not really involve claims of deviations from an ERISA plan (*i.e.,* a "claim that the plan erroneously withheld benefits due," *Dukes,* 57 F.3d at 356). Rather, to the extent Plaintiffs' claims may not touch upon the quality of treatment received, Plaintiffs' claims may be alleging that the Plan is flawed, not in its operation, but in its conception.

under the plan, and the Baumans do not claim anywhere in these counts that they were denied any of the benefits that were due under the plan." *Id.* We find, likewise, that Plaintiffs have not claimed that they were denied any of the benefits that were due under the Plan in the case at bar.

The count in *U.S. Healthcare* that deals with the HMO's policy of presumptively discharging newborns within twenty-four hours "charges U.S. Healthcare with both direct negligence for the adoption and implementation of the policy and with vicarious liability for the negligence of [the doctor and the hospital]." *Id.* This count, like all the others in *U.S. Healthcare,* was held to have been not completely preempted by ERISA. We do not see how the situation in *U.S. Healthcare* differs in any material way from what the Tiemanns have alleged in paragraphs 27(c) and (d) and 31(c) of their Complaint. There, Plaintiffs charge Moving Defendants with

> promulgati[ng] rules, regulations and standards ... that [discouraged physicians and participating health care providers from] referring patients for additional required medical treatment [and encouraged them to] decreas[e] and/or minimiz[e] required medical services, treatments, diagnostics and referrals to specialists where the [Moving] Defendants knew and/or should have known that the enforcement of such rules, regulations and/or standards would lead to the rendition of substandard medical care and deviations from the applicable standard of care with resulting patient injuries [i.e., negligence/medical malpractice].

Complaint, at ¶ 27(c)-(d). The breach of contract count of Plaintiffs' Complaint is of a similar nature, alleging:

> [p]romulgating, implementing and/or following a schedule of rules, regulations and/or standards in the rendition of medical and primary care services that

violated applicable industry standards and applicable law . . . .

*Id.,* at ¶ 31(c).

The Third Circuit explains its holding in *U.S. Healthcare* with respect to the twenty-four hour discharge policy:

> With respect to the direct negligence claim, the Baumans' challenge to U.S. Healthcare's twenty-four-hour discharge policy is directed at the HMO's actions in what we characterized in *Dukes* as an HMO's role in "arranging for medical treatment" rather than its role as a plan administrator determining what benefits are appropriate. *Dukes,* 57 F.3d at 360. Thus, it is the HMO's essentially medical determination of the appropriate level of care that the Baumans claim contributed to the death of their daughter. This is not a claim that a certain benefit was requested and denied. As the Secretary points out, under the facts as pleaded in the complaint, U.S. Healthcare's policy and incentive structure were such that "the Baumans never had the option of making an informed decision as to whether to pay for the hospitalization themselves," as would occur in a situation in which coverage is sought and denied.... Accordingly, this claim fits squarely within the class of 'claims that we identified in *Dukes* as involving the quality of care. Here, as in *Dukes,* "the plaintiffs ... are attempting to hold the HMO[ ] liable for [its] role as the arranger[ ] of their [decedent's] medical treatment." *Dukes,* 57 F.3d at 361.

*U.S. Healthcare,* 193 F.3d at 162–163. We believe that, as in *U.S. Healthcare,* Moving Defendants were acting in their role as an arranger of medical treatment, rather than as plan administrator "determining what benefits are appropriate." *Id.* at 162 (*citing Dukes,* 57 F.3d at 360). Further, as in *U.S. Healthcare,* we find that Moving Defendants' "policy and incentive structure were such that [Plaintiffs] never had the option of making an informed decision [regarding treatment], as would occur in a situation in which coverage is sought and

denied." *See id.* at 163. Thus, we, too, conclude that Plaintiffs' claims—even those most subject to challenge on complete preemption grounds—are claims that go to the quality of care received under the *Dukes* standard.

To the extent that Plaintiffs allege that Moving Defendants acted with knowledge or reckless indifference to the possibility that their policies would result in substandard medical care, our conclusion is not affected. Like the negligence claim, this allegation "goes to the quality of care . . . received rather than an administrative decision as to whether certain benefits were covered by the plan." *See id.* These charges "do not raise the failure of [Moving Defendants] to pay for a benefit or process a claim for benefits as the basis for the injury suffered." *Id.* Therefore, they are not completely preempted by ERISA.

The similarities between *U.S. Healthcare* and the case at bar are placed in further relief by a claim of plaintiffs in *U.S. Healthcare* that the Third Circuit identified as demonstrating that HMO's role as a provider or arranger of medical services, as opposed to a plan administrator role:

> [a]s the Baumans allege, the HMO adopted policies that "encouraged, pressured, and/or directly or indirectly required" their participating physicians to discharge newborn infants and that also discouraged physicians to readmit newborn infants when the appropriate standard of care required otherwise under state law. . . . Assuming these allegations are true, as we must when considering a motion to dismiss, the Baumans seek recovery for decisions that U.S. Healthcare made in providing and arranging medical services, decisions that adversely influenced the medical judgment of its participating physicians.

*Id.* Our Plaintiffs have essentially made the same allegations regarding the Moving Defendants as the plaintiffs made of their HMO in *U.S. Healthcare.* Therefore, we are compelled to reach the same conclusion with regard to complete preemption as the Third Circuit reached in *U.S. Healthcare.* We find that there is no complete preemption here.

**(C) Beyond Rejection of Complete Preemption**

Interestingly, the court in *U.S. Healthcare* goes beyond accepting the well-pleaded complaint rule, which it held was not usurped by the complete preemption exception. In one instance, the Third Circuit appears to permit plaintiffs to recharacterize an ambiguously-worded count that the district court had held was completely preempted and had therefore dismissed. There, plaintiffs alleged that the HMO was negligent in "not providing for [an in-home] visit by a participating provider [a pediatric nurse], despite assurances under its L'il Appleseed program that such a visit would be provided and despite a telephone call . . . from the Baumans requesting this service, which the district court interpreted as stating a claim that fits under section 502(a)." *Id.* at 164 (internal quotations omitted).

We have no analogous claim by Plaintiffs in the instant case. Our Plaintiffs' Complaint nowhere alleges that Plaintiffs requested a service that was denied them. Rather, the gravamen of their Complaint is one of failure to timely diagnose and disclose Mr. Tiemann's medical condition, thus allowing his physical deterioration. Nonetheless, we find it instructive to see the extent to which the Third Circuit went in order to avoid trumping plaintiffs' state law causes of action. The Third Circuit declared, "[w]e cannot say that the District Court was unreasonable in so holding [that plaintiffs' claim was completely preempted,]" *id.,* but nonetheless accepted plaintiffs' interpretation of their complaint. Their interpretation was that the complaint stated a cause of action "for violating a tort duty to provide [plaintiffs] adequate medical care, rather than a violation of a [contractual] promise . . . made to

them in their ERISA plan." *Id.* (internal quotations omitted).

The Third Circuit went beyond anything we are called upon to do in the instant case, as seen in their discussion, below:

The mere fact that [plaintiffs] referred in their complaint to a benefit promised by their health care plan does not automatically convert their state-law negligence claim into a claim for benefits under section 502. If, as [plaintiffs] contend, U.S. Healthcare failed to meet the standard of care required of health care providers by failing to arrange for a pediatric nurse in a timely manner, [this count] sets forth an ordinary state-law tort claim for medical malpractice.

*Id.* Ours is not even as close a case. Our Plaintiffs aver that they did not know of the actual nature of Mr. Tiemann's illness, due to the Defendants' alleged negligence. Thus, Plaintiffs' Complaint does not allege that they requested a particular service for which they were subsequently rejected by Moving Defendants.

*U.S. Healthcare* also deals with preemption under ERISA section 514(a). The Third Circuit concludes that it is up to the state court to decide that question, as the district court is without jurisdiction to make such a determination, based upon *Dukes:*

After it concluded that it had subject matter jurisdiction over Count Six, the District Court dismissed that count as expressly preempted by section 514(a), 29 U.S.C. S 1144(a), on the force of its determination that the count was completely preempted. Inasmuch as we conclude that Count Six was not completely preempted, the District Court did not have subject matter jurisdiction over the complaint and should have remanded it to state court under 28 U.S.C. § 1447(c). As we stated in *Dukes,* "[w]hen the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot re-

solve the dispute regarding preemption." *Dukes,* 57 F.3d at 355.

*Id.* at 165. In keeping with this line of cases, we conclude that the Court of Common Pleas shall be the arbiter of this preemption issue.

## VI. CONCLUSION

For all of the reasons set forth above, Moving Defendants' Motion to Dismiss will be DENIED and Plaintiffs' Motion for Remand will be GRANTED in its entirety. To the extent that we have not dealt directly with those counts in Moving Defendants' Motion to Dismiss that do not concern ERISA preemption—specifically, failure to exhaust ERISA's mandatory grievance procedure and an ERISA bar against punitive damages—, we find that in light of our analysis regarding ERISA preemption, these counts do not require our further review. The Motion to Dismiss of the physician-defendants will be DENIED AS MOOT. The parties shall bear their own costs. An appropriate order follows.

### ORDER

AND NOW, this 11th day of January, 2000, upon consideration of Defendants' U.S. Healthcare Systems, Inc. and Corporate Health Administrators Inc.'s Motion to Dismiss Plaintiffs' Complaint and Memorandum of Law Supporting Their Motion to Dismiss Plaintiffs' Complaint and Exhibits thereto, filed on December 2, 1999; Plaintiffs' Response to Defendants U.S. Healthcare Systems, Inc. and Corporate Health Administrators, Inc.'s Motion to Dismiss Plaintiffs' Complaint and Memorandum of Law Contra Defendants' Motion to Dismiss Plaintiffs' Complaint and Exhibits thereto, filed on December 16, 1999; Plaintiffs' Motion for Remand and Application for Sanctions, filed on December 22, 1999; Motion to Dismiss of Defendants, Evan Kessler, D.O. and Anthony G. Wydan, M.D. for Failure to State a Claim Upon Which Relief Can Be Granted as to Plaintiffs' Claim for Punitive Damages, and Memorandum of Law in Support of

Their Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Exhibits thereto, filed December 29, 1999; and Defendants' U.S. Healthcare Systems, Inc. and Corporate Health Administrators Inc.'s Reply in Support of Their Motion to Dismiss Plaintiffs' Complaint and Exhibit thereto, filed on January 6, 2000; it is hereby ORDERED consistent with the foregoing Memorandum that:

(1) Defendants' Motion to Dismiss, filed December 2, 1999, is DENIED without prejudice in its entirety.

(2) Plaintiffs' Motion for Remand, filed December 22, 1999, is GRANTED; however, the application for sanctions is DENIED.

(3) This matter is REMANDED to the Court of Common Pleas, Philadelphia County, where the parties shall continue to proceed in the case commenced on June 10, 1999.

(4) The Motion to Dismiss of Defendants, Evan Kessler, D.O. and Anthony G. Wydan, M.D. for Failure to State a Claim Upon Which Relief Can Be Granted as to Plaintiffs' Claim for Punitive Damages, filed December 29, 1999, is DENIED without prejudice AS MOOT.

(5) This case is closed.